## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

**STEPHEN A. DUBOIS,**

    **Plaintiff,**

**vs.**                     **Case No.  1:17cv203-MW/CAS**

**NANCY A. BERRYHILL,
Deputy Commissioner for
Operations, performing the
duties and functions not reserved
to the Commissioner of Social
Security,**[1]

    **Defendant.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for a period of disability and Disability Income Benefits (DIB) filed pursuant to Title II of the Social Security Act.  After consideration

---

[1]  Defendant's title has changed.  *See* https://www.ssa.gov/agency/commissioner.html (last viewed Apr. 18, 2018).

of the entire record, it is recommended that the decision of the

Commissioner be affirmed.

## I. Procedural History

On July 25, 2013, Plaintiff, Stephen A. Dubois, filed an application for

DIB, alleging disability beginning April 7, 2012, based on a back injury

caused by an automobile accident.  Tr. 40, 195-201, 228.[2]  Plaintiff last met

the insured status requirements for DIB on December 31, 2017.  Tr. 40,

223.

Plaintiff's application was denied initially on September 12, 2013, and

upon reconsideration on November 20, 2013.  Tr. 40, 106-08.  On January

7, 2014, Plaintiff requested a hearing.  Tr. 40, 122-23.

On September 3, 2015, Plaintiff's counsel requested the ALJ to refer

Plaintiff for a consultative physical examination and a consultative mental

health evaluation.[3]  Tr. 256.  On November 25, 2015, Plaintiff's counsel

provided the Administrative Law Judge (ALJ) with a letter in response to

additional evidence provided the ALJ, specifically the consultative

---

[2]  Citations to the transcript/administrative record, ECF No. 13, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

[3]  ALJ Bernard Porter held a hearing on September 8, 2015.  Plaintiff appeared with counsel, Pamela C. Dunmore, an attorney.  Tr. 10-36.  Toward the end of the hearing, the ALJ stated that he would consider counsel's request to refer Plaintiff for at least one or two consultative examinations.  Tr. 34.

examination reports from Diana Benton, Psy.D., and Eftim Adhami, M.D., Exhibits 4F and 5F.  Tr. 265-67, 318-38.

The video hearing was held on April 15, 2016, before ALJ Porter, and Plaintiff appeared in Gainesville, Florida, and the ALJ presided over the hearing from Jacksonville, Florida.  Tr. 40, 55-85.  Plaintiff was represented by Ms. Dunmore.  Tr. 40, 55, 118-21.  Plaintiff testified during the hearing. Tr. 40, 60-79.  Paul R. Dolan, an impartial vocational expert, testified during the hearing.  Tr. 40, 79-83.  During the hearing, Exhibits 1A through 8F were received into evidence.  Tr. 58; *see* Tr. 51-54.  On June 1, 2016, the ALJ issued a decision and denied Plaintiff's application for benefits, concluding that Plaintiff was not disabled from April 7, 2012, through the date of the decision.  Tr. 40-50.

On July 29, 2016, Plaintiff requested review of the ALJ's decision. Tr. 194.  On June 9, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-6; *see* 20 C.F.R. § 404.981.

On April 10, 2017, Plaintiff, by counsel, filed a Complaint with this Court seeking review of the ALJ's decision.  ECF No. 1.  The parties filed memoranda of law, ECF Nos. 21 and 22, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings:

1. "The claimant meets the insured status requirements of the Social Security Act through December 31, 2017."  Tr. 42.

2. "The claimant has not engaged in substantial gainful activity since April 7, 2012, the alleged onset date."  *Id.*

3. "The claimant has the following severe impairments: lumbar disc disease ('DDD'), bilateral carpal tunnel syndrome ('CTS'), cervical disc disease ('DDD' [sic]), and depressive disorder."  *Id.*

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  *Id.*  The ALJ considered Listing 1.02 "as argued by the claimant's representative as the claimant does not have the inability to ambulate effectively or an inability to perform fine and gross movements effectively.  Furthermore, no treating or examining physician, whose opinion has been given any weight, has mentioned findings equivalent in severity to the criteria of any listed impairment."  *Id.*  The ALJ also considered the criteria of Listing 12.04 and the "paragraph B" criteria.  Tr. 43-44.  The ALJ determined that Plaintiff had *mild* restriction in activities of daily living,[4] *moderate* difficulties in social functioning and regard to concentration, persistence, or pace, and *no* episodes of decompensation, which have been of extended duration.  Tr. 43.  The ALJ considered the consultative examination evaluation by Dr. Benton, *id.*, *see* Tr. 318-25 (Exhibit 4F), Dr. Adhami's "normal

---

[4]  The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms.  Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).  *But see* Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).  Although the ALJ did not expressly refer to the three-part pain standard set forth in Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002), the ALJ's findings, discussion, and citation to 20 C.F.R. § 404.1529, Tr. 44, indicate that the pain standard was applied.  Wilson, 284 F.3d at 1226.

psyche findings," *id.*, *see* Tr. 326-38 (Exhibit 5F), and treatment records.  Tr. 43-44.  The ALJ also determined that the "paragraph C" criteria were not satisfied.  Tr. 44.

5. The claimant has the RFC to perform sedentary work and can push/pull as much as he can lift/carry.  He can occasionally operate foot and hand controls and reach overhead.  He can frequently handle, finger, and feel bilaterally.  He can occasionally climb ramps/stairs and kneel, and he can frequently balance, stoop, and crouch.  He can never climb ladders or scaffolding or crawl.  He should avoid unprotected heights, moving mechanical parts, and exposure to temperature extremes.  He is limited to simple tasks and simple work-related decisions.  He can occasionally interact with supervisors, coworkers, and the public.  Time off task can be accommodated by normal breaks.  He also needs a sit/stand option that allows for a change of position at least every 30 minutes, which is a brief positional change lasting no more than 3 minutes at a time with the claimant remains at the work station during the positional change.  Tr. 44.

6. The claimant is unable to perform any past relevant work such as commercial/institutional cleaner, heavy exertion as defined in the Dictionary of Occupational Titles (DOT), medium as performed, and with an SVP of 2; and maintenance engineer/janitor, medium exertion with an SVP of 3.  Tr. 48.

7. The claimant was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.  *Id.*

8. "The claimant has at least a high school education and is able to communicate in English."  *Id.*  "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills."  Tr. 49.

9. The ALJ determined that if the claimant had the RFC to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28.  Tr. 49.  The ALJ determined, however, that Plaintiff's "ability to perform all or

substantially all the requirements of this level work has been impeded by additional limitations," and, as a result, he "asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience," and RFC.  The vocational expert testified that such an individual could perform the representative occupations such as document preparer, microfilm, addresser, and ink printer, all sedentary exertion, unskilled, with an SVP of 2.[5]  *Id.*; Tr. 81-83.

10.   The claimant has not been under a disability, as defined in the Social Security Act, from April 7, 2012, through the date of the date of the ALJ's decision.  Tr. 50.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131

---

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  A Specific Vocational Preparation (SVP) of 1 means "short demonstration only." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  An (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month."  *Id.*  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of 1 and 2.  Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

(11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[6]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations

---

[6] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

omitted).  A disability is defined as a physical or mental impairment of such

severity that the claimant is not only unable to do past relevant work, "but

cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national

economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage

in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not

less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R.

§§ 404.1505(a), 404.1509 (duration requirement).

Both the "impairment" and the "inability" must be expected to last not

less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).  In addition,

an individual is entitled to DIB if he is under a disability prior to the

expiration of his insured status.  *See* 42 U.S.C. § 423(a)(1)(A); Moore v.

Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845

F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health &

Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.  20 C.F.R.

§ 404.1520(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful
   activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.  Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.[7]  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224,

---

[7]  An RFC is the most a claimant can still do despite limitations.  20 C.F.R.

1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786

F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).

An ALJ may make this determination either by applying the grids or by

obtaining the testimony of a vocational expert.   Phillips, 357 F.3d at 1239-

40; *see* 20 C.F.R. Part 404, Subpart P, Appendix 2.   If the Commissioner

carries this burden, the claimant must prove that he or she cannot perform

the work suggested by the Commissioner.   Hale v. Bowen, 831 F.2d 1007,

1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and

consequently, is responsible for producing evidence in support of his claim.

*See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.

---

§ 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  Although an ALJ considers medical source opinions, the responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* SSR 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."); *see also* Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination "is within the province of the ALJ, not a doctor").  The Court will apply the SSR in effect when the ALJ rendered the decision.  *See generally* Bagliere v. Colvin, No. 1**:**16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

## IV. Legal Analysis

### Substantial evidence supports the ALJ's evaluation of Plaintiff's RFC.

Plaintiff recites some of the evidence considered by the ALJ. ECF No. 21 at 2-10, 26-35. Plaintiff's first argument is that "the decision rater" used "the FIT software" at step 2 of the sequential evaluation process and erroneously noted that Plaintiff had bilateral carpal tunnel syndrome among several severe impairments. ECF No. 21 at 28. Plaintiff further suggests that "[t]her [sic] is absolutely [sic] no evidence that plaintiff Dubois suffers from carpal tunnel syndrome." *Id.* at n.16. Plaintiff continues that, considering this error, "the ALJs [sic] entire software enhanced analysis is flawed." *Id.* at 29.

In April 2012, Plaintiff was involved in a motor vehicle accident and alleged back and lower extremity impairments. Tr. 45. Bilateral carpal tunnel syndrome is not a feature of this case. Although bilateral carpal tunnel syndrome may or may not be a severe impairment, the ALJ refers to George G. Feussner, M.D.'s, April 2012 examination and treatment of Plaintiff, which included an April 24, 2012, EMG and nerve conduction velocity report. Tr. 45, 351. Results of this study are noted and impressions included bilateral carpal tunnel syndrome. *Id.* The ALJ

referred to the results of this study including "bilateral CTS."  Tr. 45.  No error is shown.

Plaintiff then argues that he suffered from disabling failed back surgery and back pain because studies showed those impairments are possible outcomes after surgical intervention.  ECF No. 21 at 29-30. Plaintiff also refers to a definition of "chronic pain" to show that he suffered from disabling pain.  ECF No. 21 at 31.

The ALJ considered the relevant medical evidence, including medical opinions from treating and consulting medical sources, when he determined Plaintiff's RFC.  Tr. 44-48.  Plaintiff was involved in a motor vehicle accident in April 2012 and complained of neck and back pain. Tr. 45, 276.  An MRI of the thoracic spine was negative.  Tr. 283.  An MRI of the cervical spine showed mild degenerative changes of the cervical spine with slight straightening of lordosis and no acute fracture or subluxation.  Tr. 284.  An MRI of the lumbar spine showed disc herniation at L5-S1 nerve root compression and bulging disc at L4-5.  Tr. 45, 346.  A nerve conduction study of April 17, 2012, showed bilateral median nerve injuries, but no evidence for neuropathy in the lower extremities.  Tr. 45, 342.  Another nerve conduction study of April 24, 2012, referred to above,

showed cervical radiculopathy, C6; bilateral carpal tunnel syndrome; and lumbar radiculopathy, bilateral L5.  Tr. 45, 351.

In June 2012, as noted by the ALJ, Plaintiff was examined by D. Troy Trimble, D.O., and had negative straight leg testing bilaterally and muscle strength 5/5 in both legs.  Tr. 45, 450.  Plaintiff was recommended to do physical therapy and possible invasive L5-S1 posterior interbody fusion. Tr. 453.

In August 2012, after reporting that conservative therapy had failed, Plaintiff decided to proceed with a lumbar L5-S1 fusion.  Tr. 46, 362-64. On a follow-up to Dr. Trimble, Plaintiff reported doing a lot better.  Tr. 46, 312.  Dr. Trimble noted that two weeks after surgery, Plaintiff was having an "early good clinical outcome" and he was to continue with a walking program.  *Id.*  Plaintiff reported that he "filed for short-term disability as he thinks it will take him at least a few months to get back to a status where he will be able to work as a janitor."  *Id*.  On examination, Plaintiff was able to rise from sitting to standing independently, was ambulating without an assistive device, and he had a normal gait pattern.  There was no evidence of any gross neurologic deficits.  *Id.*  In November 2012, three months post-operation, Plaintiff reported: "I need to be out of work as long as possible." Tr. 46, 310.  On examination, he was in no acute distress, could rise

independently from a seated position and walked with a normal gait, but used a cane for assistance.  Tr. 310.  Dr. Trimble noted Plaintiff had no gross neurologic deficits to his bilateral lower extremities.  *Id.*

The ALJ noted that in August 2013, one-year post-surgery, Plaintiff followed up with Dr. Trimble.  Tr. 47, 308.  Plaintiff was able to rise from sitting to standing independently, he had a normal gait without the use of assistive devices, and he was neurologically intact to his bilateral lower extremities without focal deficits.  *Id.*  AP and lateral standing lumbar spine x-rays showed L5-S1 minimally invasive interbody fusion with posterior screw and rod fixation in a very satisfactory position; normal bone mineralization; normal soft tissue shadows; no evidence of adjacent breakdowns; and no lucencies around the screws or implant failure.  *Id.*  As noted by the ALJ, Dr. Trimble did not note any limitations at that time; although Dr. Trimble's assessment included noting some continued low-back pain.  *Id.*  The ALJ stated that "[i]t appears that this was his last treatment."  Tr. 47.

As noted above, on September 3, 2015, Plaintiff's counsel requested ALJ Porter to refer Plaintiff for a consultative physical examination and a consultative medical health evaluation.  Tr. 256.  The first of two hearings

before the ALJ was held on September 8, 2015, and the ALJ referred to

this request toward the end of the hearing.  Tr. 10, 34.

On September 22, 2015, Plaintiff had a psychological evaluation by

Dr. Benton.  Tr. 322-25.  Plaintiff alleged disability due to back injury in an

auto accident.  Tr. 322.  At step 3, the ALJ referred to Dr. Benton's

evaluation.

> The claimant underwent a consultative examination with Diana
> Benton, Psy.D. in September 2015.  Dr. Benton noted the
> claimant interacted appropriately with office staff and the
> interviewer and provided his own history. He was fully
> cooperative.  He reported dysthymic mood, decreased
> appetite, difficulty sleeping, low energy level, and feelings of
> worthlessness.  He stated that his wife left him as his sexual
> performance was almost gone.  He also reported that he
> cannot work like he used to and cannot pick things up like
> before.  He reported the ability to eat independently and
> bathe/dress himself, though he requires help bathing his lower
> extremities and getting in/out of tub at times.  He also requires
> some help at times to tie his shoes and pull his pants to his
> knees.  Mental status findings include normal speech and
> ability to engage appropriately in conversation.  He had normal
> findings, and unspecified depressive disorder was diagnosed.
> Dr. Benton opined the claimant had no limitations with regard
> to his ability to carry out, remember, and understand
> instructions or interact appropriately with others.  (Exhibit 4F)

Tr. 43.  Consistent with her report, Dr. Benton also completed a Medical

Source Statement of Ability to do Work-Related Activities (Mental) and did

not identify any work-related limitations.[8]  Tr. 319-21.

On September 26, 2015, Plaintiff was examined by Dr. Adhami.

Tr. 47-48, 327-38.  Although lengthy, the ALJ summarized Dr. Adhami's

evaluation results.

> In September 2015, Dr. Adhami examined the claimant.  The
> claimant reported ongoing back pain with radiculopathy.  His
> treatment at the time consisted of Aleve and Goody powders.  He
> continued to smoke 1/2 pack per day and drink alcohol "on the
> weekends."  Examination findings were normal with the exception of
> pain on rotation of the right hip; 3/5 strength of the lower extremities
> in the feet while supine; unstable toe/heel walk; subjective back and
> leg pain; decreased flexion and extension of the lumbar spine;
> positive straight leg right side supine on at 30 degrees.  Dr. Adhami
> noted back and hip pain but indicated no diagnoses.  He opined the
> claimant can perform light exertional level work with the ability to sit
> 2 hours; stand and walk 1 hour each at one time and sit for 3 hours;
> stand and walk for 4 hours total each in an 8 hour workday.  He
> opined the use of a cane is medically necessary.  He noted the ability
> to continue use the upper extremities and frequently use the lower.
> He noted occasional postural with frequent ability to balance.  He
> noted frequent ability to operate motor vehicle and tolerate exposure
> to humidity, wetness, pulmonary irritants, extreme heat/cold, and
> vibrations and the ability to occasionally tolerate unprotected heights
> and moving mechanical parts.  (Exhibit 5F)
>
> Though the claimant alleges that he cannot work at all, his testimony
> that he can lift and carry 15-20 pounds in [sic] consistent with the
> sedentary RFC [*see supra* at 6, n.5].  Furthermore, his ability

---

[8]  Although not given the same controlling weight or deference as the opinion of
treating physicians, the findings of a state agency medical consultant regarding the
nature and severity of a claimant's impairments must be treated as expert opinion at the
ALJ and Appeals Council levels of administrative review.  *See* SSR 96-6p, 1996 SSR
LEXIS 3, at *4 (July 2, 1996) (rescinded and replaced by SSR 17-2p eff. Mar. 27, 2017).
The findings of a State agency medical consultant may provide additional evidence to
support the ALJ's findings.  *See* Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).

push/pull as much as he can lift/carry is consistent with Dr. Adhami's findings of normal/full grip and upper extremity strength. He can occasionally operate foot and hand controls and reach overhead, which accounts for his lower extremity weakness and pain. He can frequently handle, finger, and feel bilaterally, which is consistent with his normal upper extremity strength. He can occasionally climb ramps/stairs and kneel, and he can frequently balance, stoop, and crouch, which is consistent with Dr. Adhami's findings. He can never climb ladders, ropes, or scaffolding or crawl, given his leg weakness. He should avoid unprotected heights, moving mechanical parts, and exposure to heat/cold, given his lower extremity weakness. He is limited to simple tasks and simple work[-] related decisions, given his history of unskilled/semi-skilled work and depressive symptoms and any difficulty concentration due to pain. He can occasionally interaction [sic] with supervisors, coworkers, and the public, as he testified that he gets along well with others. Time off task can be accommodated by normal breaks, as nothing in [the] record warrants any additional breaks. He will also need a sit/stand option that allows for a change of position at least every 30 minutes, which is a brief positional change lasting no more than 3 minutes at a time where the claimant remains at the work station during the positional change, which would account for his allegations that he cannot sit/stand for long periods of time and must change positions after 15-30 minutes (thought [sic] this is not an exact match for the RFC, nothing in the record warrants a position change every 15 minutes). The use of a cane is not included in the RFC, as this was not prescribed by his treating provider, and he testified that he mainly uses it in the mornings, and the use of a cane is not an issue with sedentary work. While Dr. Adhami's opinions are not a perfect match for the RFC delineate [sic] above, the totality of the evidence supports the limitations and restrictions in the RFC, which is actually more restrictive (a sedentary RFC while Dr. Adhami opined a light RFC).[9] The greater limitations are based on the claimant's testimony and complaints as explained above.

---

[9] In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *see* Tr. 333 (Dr. Adhami's lift/carry assessment).

Tr. 47-48; *see supra* at 16, n.8.  As noted above, the ALJ found Plaintiff was more limited than opined by Dr. Adhami in some respects and found he could only perform a range of sedentary work rather than light work. Tr. 48.

The ALJ also considered the opinion of the State agency physician, Lionel Henry, M.D., who reviewed the record as of November 17, 2013, and opined Plaintiff "retained the physical ability to perform the exertional demands of at least a reduced range of sedentary work as that term is defined in the regulations (Exhibit 3A)."  Tr. 48; *see* Tr. 99-101.  The ALJ gave Dr. Henry's opinion great weight as it was supported by the record. Tr. 48.

As the finder of fact, the ALJ is charged with the duty to evaluate all the medical opinions of the record and resolve conflicts that might appear. 20 C.F.R. § 404.1527.[10]  When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, such as "[t]he more

---

[10]  This provision applies to claims filed before March 27, 2017.  For claims filed after that date, section 404.1520c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," applies.

a medical source presents relevant evidence to support an opinion,

particularly medical signs and laboratory findings, the more weight" that

opinion is given; (3) the opinion's consistency with the record as a whole;

(4) whether the opinion is from a specialist and, if it is, it will be accorded

greater weight; and (5) other relevant but unspecified factors.

20 C.F.R. § 404.1527(b) & (c)(1)-(6).

The opinion of the claimant's treating physician must be accorded

considerable weight by the Commissioner unless good cause is shown to

the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

This is so because treating physicians "are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of your

medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone

or from reports of individual examinations, such as consultative

examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).  "This

requires a relationship of both duration and frequency."  Doyal v. Barnhart,

331 F.3d 758, 762 (10th Cir. 2003).

The reasons for giving little weight to the opinion of the treating

physician must be supported by substantial evidence, Marbury v. Sullivan,

957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated.

Phillips, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor, 786 F.2d at 1053.

The ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory." Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

Opinions on some issues, such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(d); *see* <u>Bell v. Bowen</u>, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."  SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996) (rescinded eff. Mar. 27, 2017).  Although physician's opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has responsibility of assessing the claimant's RFC.

Substantial evidence supports the ALJ's consideration of the medical evidence of record, including medical source evaluations.  No treating physician or other medical source opined that Plaintiff's impairments are of such severity as to preclude him from working in any capacity.

Substantial evidence supports the ALJ's RFC assessment that Plaintiff can perform sedentary work with limitations, Tr. 44, and the ALJ properly relied on the vocational expert's testimony that supported the

ALJ's finding that Plaintiff could perform other jobs in the national economy. The ALJ properly performed his responsibility of evaluating the relevant evidence in assessing Plaintiff's RFC.  Tr. 44-48; *see* <u>Ybarra v. Comm'r of Soc. Sec.</u>, 658 F. App'x 538, 543 (11th Cir. 2016) (unpublished).  (The ALJ noted, in part, that his RFC assessment "is supported by the totality of the objective evidence and the claimant's lack of ongoing treatment.  Though he alleges no insurance for treatment, there is no indication he sought free or reduced cost treatment and was denied, suggesting satisfactory management of pain with conservative, over[-]the[-]counter treatment."  Tr. 48.)  No error has been shown.

## VI.  Conclusion

Considering the record as a whole, the ALJ's findings are based upon substantial evidence in the record and the ALJ correctly applied the law. Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED** and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on May 17, 2018.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.